IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VICKI J. HAY,

    Plaintiff,

v.                                           Case No. 6:14-CV-1310-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Vicki J. Hay seeks review of a final decision by defendant, the Commissioner of Social Security, reversing her previously favorable award of benefits after it was determined that plaintiff had engaged in substantial gainful activity during the time that she was receiving disability benefits. Plaintiff denies this allegation and argues that her level of work was insufficient to deny benefits. Plaintiff more adamantly argues that the Commissioner failed to *explain* her decision, thereby warranting a reversal and immediate award of benefits, or, in the alternative, remand to the Commissioner. Upon review, the court finds that the Commissioner's decision is not supported by substantial evidence contained in the record. As such, the decision of the Commissioner is reversed and remanded for further proceedings.

                    **I.**        **Factual and Procedural Background**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 15, 2007, alleging disability beginning January 1, 2007. She was awarded disability benefits beginning in June 2007. On March 24, 2011, plaintiff received a Notice of Proposed Decision

stating that there was evidence to suggest that she had performed substantial gainful work since her alleged onset date thereby indicating that an award of benefits was inappropriate. On May 23, 2011, the Commissioner issued a "Final Notice – Reversal to a Denial" and plaintiff's benefits ceased. Plaintiff filed a request for a hearing, which was held on September 18, 2012, before Administrative Law Judge Alison K. Brookins. Plaintiff appeared and testified, although she was not represented by counsel. Her husband, Thomas Hay, also appeared and testified.

Plaintiff and her husband are self-employed and jointly own Hay Construction, a Limited Liability Company. Initial tax filings from 2007 and 2008 show that plaintiff earned $11,233 and $19,655, respectively, plus additional wages of $2,400 in 2008. Dkt. 4-1, at 247, 263, 273. After being informed by her accountant that she was earning too much money (or at least listing too much earned income on her tax returns) to maintain her disability benefits, plaintiff amended her 2008 tax return. Dkt. 4-1, at 115.

During the hearing, the ALJ asked plaintiff if, at any time since she was found to be disabled, she had done any work for Hay Construction, to which plaintiff testified as follows:

> Yes, now, in I think it was '08, I was approached by Kansas, to do the Working Healthy program. And through the Working Healthy program, I was able to, basically they were going to help me find a job or do something within my means at that time, my disability. But the people who were []helping me said, well if my company would pay me to do the paperwork that I already did, that would qualify me for helping with the Working Healthy program. So that's how we did it. And so I got paid like $200 gross every two weeks to do the Working Healthy program. I believed that was in '08 that I started that program and was approached with that, the ticket to work program. And, so I, and I'm still doing that.

Dkt. 4-1, at 333. When asked to further elaborate as to the specifics of what she did, plaintiff stated:

> Well, when I became disabled in '07, I was in and out of the hospital all the time. But I still kept up with the paperwork, as far as doing the 941s, the quarterlies, writing out the, our employees at the time, making sure the withholding your

2

> taxes and stuff. I basically just sat there and just put it in the computer. And occasionally I would maybe have to run an errand here or there . . . It wasn't, I could do, run to town and pick up paper if they forgot it or something like that. Or bring something from home that Tom would have forgot from the job site, you know.

Dkt. 4-1, at 334-35. Plaintiff testified that she worked five to ten hours per week. Dkt. 4-1, at 334. She also indicated that if the company was to pay someone for what she was doing, it would likely be at a rate of $10 per hour. Dkt. 4-1, at 336.

Plaintiff's husband, Tom Hay, also testified. Mr. Hay stated that when he made Hay Construction a limited liability company, he listed his wife as a partner in the event that something happened to him. Dkt. 4-1, at 339. He testified that plaintiff came in at least once a week to do payroll and taxes and also did the quarterly reports and ran errands. Dkt. 4-1, at 341. In 2008, Mr. Hay was notified by his accountant that plaintiff was making too much money to maintain her disability benefits. Dkt. 4-1, at 340. Mr. Hay stated that he and his wife filed amended returns for 2008 but were unable to do so for 2007 because the deadline had passed. Dkt. 4-1, at 340.

The ALJ rendered her decision on February 7, 2013, and found that plaintiff's severe medical impairments, based on the hearing testimony and the submitted tax returns, did not prevent her from performing substantial gainful work for a period of twelve (12) months. Dkt. 4-1, at 37-40. As such, plaintiff did not meet the definition of disability under the Social Security Act. Dkt. 4-1, at 37-40. The decision of the ALJ became the final decision of the Commissioner on September 4, 2014, when the Appeals Council denied plaintiff's request for review. Dkt. 4-1, at 6-9.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

## III.    Analysis

### A.     Burden of Proof

An initial question arises out of the parties' briefs as to who has the burden of proof under these facts.  Normally, at step one, the claimant has the burden of showing that she is not performing substantial gainful activity.  *See* 20 C.F.R. § 404.1571.  Plaintiff, however, argues that hers is a "termination case," thereby shifting the burden of proof to the Commissioner to establish that she has been involved in substantial gainful activity. Dkt. 14, at 8.  The Commissioner, on the other hand, notes that plaintiff's case was never involved in the termination process; rather, it was merely reopened, thus leaving the burden of proof squarely on plaintiff.  The court agrees.

Under the Social Security Regulations, "[a] determination, revised determination, decision, or revised decision may be reopened . . . (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case." 20 C.F.R. § 404.988(b). Good cause can be found if new and material evidence is furnished. 20 C.F.R. § 404.989(a)(1).

Here, plaintiff's initial award of benefits was made on June 25, 2007. On March 24, 2011, plaintiff received a notice of a proposed decision to disallow her previously granted benefits. On May 23, 2011, just before the four-year deadline, the Commissioner issued a "Final Notice – Reversal to a Denial." Although plaintiff's benefits did cease after this final notice, there is no reference to an official "termination of benefits" anywhere in the record. In the Notice of Proposed Decision, plaintiff was asked to provide any additional information that she wanted considered, suggesting that the onus was still on plaintiff to prove both her disability and the fact that she was not engaged in substantial gainful activity. Dkt. 4-1, at 51. Furthermore, in the Final Notice, the Commissioner specifically stated "[i]t has been determined that the work you have done despite your impairment shows that you are able to do some type of substantial gainful work. Therefore, your claim must be denied. *This revises the determination recently made that you are entitled to these benefits*." Dkt. 4-1, at 55 (emphasis added).

The court therefore finds that, because plaintiff suffered a denial of benefits, rather than a termination thereof, the burden still lies with plaintiff to establish that she was not performing substantial gainful activity during the relevant time period.

**B.     Substantial Gainful Activity**

As a general rule, an individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity

and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

As noted above, at step one, the claimant has the burden of showing that she is not performing substantial gainful activity. *See* 20 C.F.R. § 404.1571. Substantial gainful activity is work that is both substantial (i.e., "work . . . that involves doing significant physical or mental activities"), and gainful (i.e., "work . . . that you do for pay or profit"). 20 C.F.R. § 404.1572(a), (b). In situations where the claimant is self-employed, as is the case here, substantial gainful activity may be shown through "[s]upervisory, managerial, advisory or other significant personal services . . . ." 20 C.F.R. § 404.1573(d).

For self-employed individuals, the Regulations provide specific guidance in determining whether they engaged in substantial gainful activity:

> (a)(2) General rules for evaluating your work activity if you are self-employed. We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. We will generally consider work that you were forced to stop or reduce to below substantial gainful activity after 6 months or less because of your impairment as an unsuccessful work attempt . . . We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services. We determine whether you have engaged in substantial gainful activity by applying three tests. If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:
>
> (i) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a

substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.

(ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2)(i)-(iii).

Because these tests require different showings, in order to determine whether the ALJ's decision is based on substantial evidence, it is first necessary to determine *which* test, under § 404.1575(a)(2), the ALJ used. The Commissioner argues that the ALJ's language clearly indicates that she was using test one. Plaintiff disagrees and alleges that, even if the ALJ was using test one for the years 2007 and 2008, she was clearly using test two or three for the years 2009 through 2012. This confusion is not unwarranted. A reading of the ALJ's decision reveals that she neglected to specifically state which test was applicable.

The ALJ clearly uses a variety of buzzwords suggesting that she used test one. As noted above, this test focuses on two elements: (1) significant services, and (2) substantial income. "In a business involving the services of more than one individual, a . . . partner will be found to be rendering significant services if . . . she contributes more than half the total time required for management of the business, or renders management services for more than 45 hours a month regardless of the total management time required by the business." SSR 83-34, 1983 WL 31256, at *3 (Jan. 1, 1983). Plaintiff testified, and the ALJ noted, that she worked five to ten hours per week doing paperwork, including quarterly taxes and payroll, running errands, and helping to

manage the business' schedule.  Dkt. 4-1, at 39.  The ALJ also relied on the testimony of Mr. Hay, who noted that plaintiff did payroll taxes every Friday, prepared the quarterly reports, ran errands, and reminded him of what needed to be done and helped keep him on track.  Dkt. 4-1, at 39.  The ALJ specifically noted that plaintiff did the same work after her award of disability as she did before.  Dkt. 4-1, at 39.

However, even assuming plaintiff worked ten hours per week, she only worked, at the outset, forty-three (43) hours per month. [1]  The ALJ was therefore required to show that plaintiff contributed "more than half the total time required for management of the business."  SSR 83-34, 1983 WL 31256, at *3.  The ALJ failed to meet this requirement, noting only that plaintiff "makes management decisions and works close to 45 hours a month."  Dkt. 4-1, at 39.  Furthermore, there is no testimony and/or evidence in the record as to what half of the total time required for management of the business would be.  This, in and of itself, is sufficient to warrant remand to the Commissioner.  *See Brown v. Astrue*, 2010 U.S. Dist. LEXIS 131448, at *16 (D. Kan. Dec. 10, 2010) (holding that remand was warranted where the ALJ "never indicated that he was applying test one, he did not make a finding that plaintiff engaged in 'significant services,' nor did he cite to any evidence which would indicate that plaintiff's activities met either definition of 'significant services.'").

Based on this finding, it is unnecessary for this court to undertake a lengthy discussion as to whether the ALJ made the required findings with regard to substantial income.  For clarity purposes on remand, however, the court simply notes that the ALJ's decision is lacking in this regard, as well.  "A self-employed individual will have substantial income from a business if 'countable income' . . . from the business averages more per month than the amount shown for

---

[1] This figure is calculated using 4.3 weeks per month.

the particular calendar year in the SGA Earnings Guidelines . . . ." SSR 83-34, 1983 WL 31256, at *4. In the alternative,

> even if "countable income" from the business does not average more than the applicable amount shown in the Guidelines, a self-employed individual will have substantial income from a business if the livelihood which he or she derives from the business is comparable to that which he or she had before becoming disabled, *or* is comparable to that of unimpaired self-employed individuals in his or her community engaged in the same or similar businesses as their means of livelihood.

SSR 83-34, 1983 WL 31256, at *4 (emphasis in original).

To determine countable income, the Regulations require that the following be deducted from an individual's gross income: (1) normal business expenses; (2) reasonable value of any significant amount of unpaid help furnished by a spouse, children, or others; (3) miscellaneous duties that ordinarily would not have commercial value; (4) unincurred business expenses; and (5) soil bank payments (if dealing with farm income). 20 C.F.R. § 404.1575(c).

Here, the ALJ discussed in detail plaintiff's 2007 and 2008 tax returns but provided no analysis as to whether this reported income was all "earned." Nor did she provide any analysis as to whether any of the above listed items needed to be deducted to determine plaintiff's "countable income." The ALJ's decision should include a proper discussion of substantial income on remand.

**IT IS THEREFORE ORDRED** this 22nd day of June, 2015, that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE
